Good morning and may it please the court. I thought we were fourth. I apologize for being a second late there. This case is about the plaintiff I.M.'s inability to access residential treatment through his Kaiser health care plan, even though both his Kaiser psychiatrist and his Kaiser therapist agreed that he needed it for the treatment of his severe eating disorder, his anorexia, in late 2014 and early 2015. Kaiser's plan at the time actually excluded all residential treatment except for what the plan termed short-term crisis residential. And so at a minimum, there's a factual dispute about whether Kaiser failed to have a functioning system to refer people to residential suffering from eating disorders to residential treatment, except perhaps in what the plan termed an acute psychiatric crisis. And there's a dispute about whether these failures by Kaiser prevented I.M.'s doctors at Kaiser from referring him to residential treatment through Kaiser, again, even though they both thought that that was what he needed at the time. Well, you had both Herrick and the Center for Discovery, didn't you, to hospitalize someone in if they needed it? And it's a physician's determination whether they actually need the hospitalization at that time. And he refused, didn't he, to participate in a number of the sessions that were given, were offered to him. Well, your honor, there are a few questions, I think, inherent in what you're asking that I'd like to unpack. First of all, Herrick was hospitalization. It was psychiatric hospitalization. It wasn't residential treatment. You know, I suppose the elephant in the room is that he was hospitalized, again, after he was discharged from Herrick, the psychiatric hospitalization. But at a minimum, there's a factual dispute about whether Center for Discovery was nothing more than this kind of acute short-term crisis residential treatment that the plan terms provided for. We believe that it was, and that this one-time agreement to pay for it doesn't indicate that it's doctors to refer patients to residential treatment if it was medically necessary and not what they called an acute crisis. And second, and maybe even more importantly, Kaiser did not refer IM to residential treatment in late 2014 or early 2015, even though both his Kaiser doctors, his psychiatrist, Dr. Hazlett, and his therapist, Dr. Rao, believed that he needed it. And even though his mother, he and his mother both offered declarations, and these were supported by emails, that they were seeking such a referral. Well, excuse me, but in December of 14, he declined the weekly group therapy sessions. He wasn't interested in the eating disorder intensive outpatient program. And his mother agreed with that and said, we're going to go to Stanford. Well, but this is not about, you know, whether he was participating in intensive outpatient. He wasn't because it wasn't working for him, and he was very ill. This isn't a blame the patient kind of, this shouldn't be a blame the patient kind of model. Both Dr. Rao and Dr. Hazlett thought that he needed residential treatment. And honestly, that is the way in which people with eating disorders are treated to recovery. I was under the impression that the plaintiff and his family discussed or agreed to the February 14 treatment plan. Now, is that incorrect? The February 14 of 2014 treatment plan? The February 2014 treatment plan was discussed with both the plaintiff and his family. And I was under the impression from the record that they had discussed it and agreed with that plan. I think that they did, but he was having trouble at the time finishing his meals. And that was really a symptom of the eating disorder from which he was suffering. So, you know, an agreement is one thing and effective treatment is another. Well, Kaiser does not treat, do they? Do you have doctors that do the treating or psychologists or psychiatrists? Yes, Your Honor, but those are Kaiser doctors and psychiatrists. Under the terms of the plan, they provide an integrated system for the delivery of health care through their doctors and their hospitals. So this was, you know, this notion that they had nothing to do with these doctors and couldn't have control with the doctor and say, well, we don't care what you said. We're going to put them here or put them there. This isn't a matter of overruling the they could have sent them anywhere with no problems from Kaiser at all. You've taken the position that Kaiser would put up barriers. And I have not found that in the record. Well, but they did put up barriers in that Dr. Hazlett said she had no clue how to refer somebody to a higher level of care. And Dr. Rao said she thought she could only do it by referring people to the eating disorder clinic and couldn't do it herself. And when there is actually a big dispute in the record, when I am and particularly his mother repeatedly contacted Dr. Rao in late 2014 and asked for a referral to residential, they never got it. And and, you know, they have both testified through through declarations. And again, there's some supporting emails for this, that that's what they were trying to do. They were trying to get a referral to residential and Dr. Rao's deposition testimony. I mean, I'll admit it's it's a little it's a little unclear and contradictory, but she did say that she thought that I am needed residential treatment at that time, and yet she never referred him to it. Well, he was hospitalized for two weeks and fed with a feeding tube, voluntary psychiatric hospitalization for additional three weeks and 11 days at the request of his himself and his family. So where is the where is the barrier? He would not cooperate once they got down. He went through all five stages of residential care offered by Kaiser and then chose to go to Stanford, I think. Your Honor, the five levels of care were not all residential. None of them. But I mean, he went through all five levels and and was not happy. But did he ever file a complaint with Kaiser? Yes, he did file a complaint. That's really that's not really what's at issue here. What is at issue is that in late 2014, he he needed residential treatment as both of his medical providers was not interested in Herrick's or the Center for Discovery in December of 2014. That's late 2014. Actually, that is that isn't what the testimony was of the testimony by Dr. Rao. The deposition testimony was that she thought that he wasn't interested in in treatment through Kaiser. And that's contradicted by the testimony, the deposition, or the declarations of both I am and his mother. And it's also contradicted by emails in which it's clear that both that both I am and his mother were asking to be referred to residential treatment. And the point is, if they just wanted as the district court judge seemed to, to believe if they just wanted to, to private pay to send him to the residential treatment of their choice. I mean, it's really hard to understand why all these months past he didn't go to residential treatment at Montanito until March of 2015. You know, get treatment. Eventually, his family just had to do what they needed to keep him alive. His physical and mental health were really deteriorating at that point. He himself didn't have the money to pay for it. You know, his his family had to basically beg, borrow and steal to private pay themselves for this treatment. And essentially, you know, there is a there are many disputed facts about whether the insurance company simply frustrated them for so long that they had to that they decided to private pay. And in this circumstance, Kaiser shouldn't be able to say that they've met their duty to provide mental health benefits. You know, despite the fact that he had had a lot of treatment and it hadn't been successful, that should not have been a reason to say he's not entitled to residential treatment and to not to never even make a referral for him in late 2014 when he repeatedly asked for it. And really, at a minimum, there's a factual dispute about really every aspect of this case about whether the plan by its terms provided for residential treatment except for acute psychiatric and short don't think there's a dispute about that. He was never referred in in in late 2014 or early 2015. And so these these factual disputes are the facts that support I am here should have precluded a grant of summary judgment. Would you mind going back to the Center for Discovery? What's your best record reference that this was not a residential treatment program, but was instead a short stay program? Well, I would say the plan terms themselves, which are at E.R. 84 and relatedly E.R. 96, which exclude residential treatment except for short treatment in a crisis residential program for stabilization of an acute psychiatric crisis, number one. And number two, the declaration from from I.M. himself that he was told that this was a one time thing. And number three, sort of maybe this is circumstantial, but the fact that the fact of the matter is he was coming out of a psychiatric hospital. He was coming out of hospitalization. Again, that supports that this was that this what the plan provided, which was short term crisis intervention for stabilization of an acute psychiatric crisis. And and I suppose also the fact that he couldn't get this treatment later on when he wasn't hospitalized. He only got it a referral this one time when he was hospitalized at Herrick for psychiatric hospitalization. And, you know, that should not be the model. The model shouldn't be. You go from crisis to crisis. You know, if you look at sort of what happened here, he was admitted to two emergency rooms multiple times. He went to a regular hospital where he was intubated. You know, he he went twice to psychiatric hospitalization. And finally, he got better when his family was forced to private pay for residential treatment that he needed all along and that that, you know, at least by mid and late 2014, his his therapist and his thank you. I'd like to reserve the rest of my time if I could for rebuttal. Mr. Laskin. Yes, thank you, Your Honor. Good morning, Joseph Laskin for the appellee and may it please the court. The district court got this one right. This case involves a single claim breach of fiduciary duty against KFHP. Plaintiff alleges that KFHP somehow erected barriers to prevent him from getting residential treatment. But the undisputed facts were that KFHP never denied plaintiff coverage for residential treatment, period. KFHP had no policies that would prevent plaintiff or anyone else from getting residential treatment. To the contrary, KFHP had covered members residential treatment for years, including plaintiff's residential treatment at Center for Discovery just months earlier. And the district court reviewed all of the evidence and found it clear that plaintiff and his mother had elected to go out of network and privately pay for for non-kaiser options. And but even if, as counsel suggests, there was some factual dispute between plaintiff and his mother on one hand and Dr. Rao, the treating providers on the other hand, even if there was some misunderstanding and plaintiff felt like he had asked for a referral, even if he didn't exactly do that explicitly, the district court correctly found that that's not a material dispute because it's undisputed that no one ever raised any of these issues to KFHP. Or as counsel said, no one ever filed any sort of complaint with the health plan until a year after the treatment ended, when it was too for KFHP to do anything to intervene. To put it simply, KFHP can't fix a problem that it doesn't know about. So on this record, the court was correct to grant summary judgment. A claim for breach of fiduciary duty requires a breach of the plan or of ERISA. And on this record, reversal would essentially require a pretty drastic expansion of what could constitute a breach of fiduciary duty. And plaintiff points to nothing in the law that permits this. I do want to briefly respond to some points that counsel raised and some of your honor's questions about the center for discovery treatment being short-term. There is nothing in the record to suggest that the language in the operative plan at the time, referring to short-term treatment, operated in any way to prevent anyone from getting residential treatment. And there's also no evidence in the record whether the treatment the plaintiff got there was intended to be short-term or long-term. He ended up discharging himself after just a few days because he was unhappy with the treatment, but it was approved for some sort of longer period. And the testimony was to the contrary, that this language never operated to prevent anyone from referring any members to any length of residential treatment. As for the issue that this was a one-time payment, what they point to in the record for that is the appellant's own declaration where he's referring a statement that was allegedly said to him by someone at Herrick Hospital upon his discharge. So this is a double hearsay statement allegedly made by someone who's not affiliated in any way with the Kaiser system about what Kaiser might do in the future. If he were to not succeed in residential treatment, that is simply not admissible and doesn't create an issue of fact and especially doesn't here, given that the evidence is undisputed, that KFHP had a standing contract with Center for Discovery. This means there's an existing contract that multiple members can be referred to. So the evidence certainly doesn't suggest that this was some sort of unique one-time arrangement. Your Honors, I'm happy to answer any questions that the panel has. Otherwise, I'm happy to yield the remainder of my time. Would you outline for me what level of residential treatment that you think is authorized under the plan? Because plaintiff is claiming really that if you look at the language, it's limited to short term. And tell me what other language you have in the plan that you think would provide for all types of residential treatment. Well, here's the response to that, Your Honor. That is, before 2015, the language in the plan referred to short-term residential treatment for an acute crisis. Now, that language was later clarified, not so much changed in substance, but clarified to say that all medically necessary residential treatment is covered. So the question is, what did that mean before 2015 when it was changed? And the thing is, the health plan does not define short-term, doesn't define acute. It leaves those questions up to the determination of the treating providers who are doing the referral. And the evidence in this case is that that language did not operate, was never used by anyone in the medical groups or in the plan to limit the scope of residential treatment. But you'd have to agree that at least under that language, there are some qualifications as to the availability of residential treatment. On the face of the language, it looks like there are some qualifications to the scope of residential treatment. What I think is important to this case is that even if there's some sort of ambiguity about that, it's not material because what's undisputed is that KFHP never relied on that language to deny residential treatment to appellant because KFHP never denied coverage for residential treatment to appellant. It never even essentially knew that any of this was happening until the complaint was raised to the plan a year after his discharge. And so even if there's some issue about what, if presented with a request for residential treatment, even if there's a question about what would have happened with that, it's irrelevant to this case because no claim was ever presented for residential treatment. And there's also no testimony that Dr. Rao didn't refer the appellant to residential treatment because of some sort of distinction between short-term or long-term treatment.  Well, I was going to inquire as to whether Dr. Rao had said, well, it's so complicated, I don't know how to do it. No, your honor. That's simply not supported by the record. The portion of the record that they keep citing for that is a portion of her deposition transcript where she actually testifies quite clearly that she understood the process for referring patients, eating disorder patients, to higher levels of care, including residential treatment, was to refer them to the eating disorder specialty clinic. And as we explained in our briefing, that makes all the sense in the world because eating disorders are very complicated. It's not, it involves both mental health issues, but also physical issues. And it requires really a multidisciplinary team to be able to diagnose and determine where someone really should be, ideally. And so the Kaiser Medical Group has developed this system where they have a clinic with these specialists who are perfectly suited to do this, to determine where someone should be. And Dr. Rao testified to her understanding that that's the system. There was no confusion on her part. As for Dr., the psychiatrist in the case, Dr. Hazlett, the portions of her testimony that they refer to for her confusion involved her confusion about how to refer the plaintiff to inpatient care. There was some confusion at the time about how to get him into inpatient hospitalization when he needed it urgently. That's a different level of care from residential treatment. There's not evidence in the record that she was confused about that process. And if she was confused about the inpatient treatment, again, that makes sense because as she testified pretty clearly, it was not her role within the system to be referring members to residential treatment. Further questions? No. Okay. Thank you, Council. Thank you, Your Honors. Thank you. The plan here says that it provides an integrated medical care program between the plan, the hospitals, and the medical group. It says if you want a referral, you have to ask your doctor. Dr. Hazlett, the psychiatrist for IM, testified she didn't have a clue and was still unsure years later at the time of the deposition how to make a referral for a higher level of care for eating disorder patients. Dr. Rao testified. Whose fault is that? Is Kaiser responsible for the treating physicians' understanding or misunderstanding? Yes, they are because they were supposed to have criteria. They didn't have any criteria. Both the 30B6 deponents, the one for Kaiser Foundation and the one for the medical group, testified that they had never developed any criteria or standards and that the doctors for referring people to residential treatment for as part of the culture of Kaiser as they went along. In fact, they didn't figure it out here and they never made a referral for plaintiff. Were they employees of Kaiser? Yes, they are employees of Kaiser. They're employees of this umbrella group. They're part of Kaiser and they're I think the Kaiser Foundation is trying to say it's separate, but that's not what the plan provides. It provides for this integrated system and these are Kaiser doctors. That's how the whole system works. You know, essentially, there's a lot of finger pointing here between Kaiser Foundation at the Kaiser doctors. There's a lot of shoulder shrugging, but you know, I would say that ERISA and the mental health parity laws require a lot more than that. I mean, in fact, both the federal government and in legislating a mental health parity law and the state of California in twice legislating about mental health parity, you know, explicitly said they wanted to remove barriers for the treatment of people suffering from mental illnesses, such as anorexia. This case is really about getting Kaiser to live up to these requirements so that its members can get the treatment that they need to recover and to live productive lives and that the plaintiff I am here was never able to access until in late 2014 when he needed that treatment and was only able to get that treatment by having his family pull the money together and private pay for it in March of 2015. Months and months after, you know, his doctors first said, agreed that he needed the treatment. So, you know, I would say there's a lot at stake here, not just for plaintiff I am, but for many other people suffering from eating disorders. And I think I'm over my time. So unless the court has any further questions, thank you. Thank you, counsel. I thank both of you for your arguments today. It's been very helpful to the court and we will take the case just argued will be submitted for decision. And we'll proceed with the oral argument calendar.
judges: Kelly, Thomas, Miller